# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**VINCENT C. DONOVAN,**

          **Plaintiff,**

          v.                                                     **Case No. 08-C-1113**

**UNITED STATES OF AMERICA,**

          **Defendant.**

## DECISION AND ORDER DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**I. PROCEDURAL AND FACTUAL HISTORY**

Vincent C. Donovan ("Donovan") was sentenced in this district by the Honorable J.P. Stadtmueller on October 19, 1992, in case number 91-CR-265, to a total of 212 months imprisonment. (Stipulated Proposed Findings of Fact ("SPFF"), Docket No. 31 at ¶8; Docket No. 34-1 at 17.) At the sentencing hearing, Judge Stadtmueller stated: "The court determines that the defendant does not have the financial assets or ability to pay fine or costs of incarceration, community confinement or supervision, and, therefore, waives any fine, cost of incarceration, community confinement and supervision in this case." (SPFF, Docket No. 31 at ¶ Docket No. 34-1 at 17-18.) The issue raised in this case is whether or not Judge Stadtmueller at sentencing ordered that Donovan not pay "subsistence."

The germane factual history commences towards the end of his prison sentence when Donovan became eligible for community confinement. (SPFF, Docket No. 31 at ¶10.) On about March 16, 2006, Donovan signed the Bureau of Prisons' ("BOP") Community Based Program

Agreement ("CBPA"). (SPFF, Docket No. 31 at ¶11.) This form states, "I understand that while a resident of a community corrections center or work release program I will be expected to contribute the cost of my residence through payment to the contractor and I agree to make such payments." (Docket No. 20-2 at 2.) The BOP refers to such payments as "subsistence payments." (SPFF, Docket No. 31 at ¶12.) Despite this agreement, the BOP retains the discretion to reduce or waive the collection of the subsistence payments. (SPFF, Docket No. 31 at ¶13.)

Donovan was initially transferred to a halfway house in Chicago on July 20, 2006. (SPFF, Docket No. 31 at ¶15.) However, because his stay at this initial placement was short in duration, he did not make any subsistence payments during his stay at the Chicago facility. (SPFF, Docket No. 31 at ¶16.) On August 15, 2006, Donovan was transferred to Parsons House, a halfway house in Milwaukee. (SPFF, Docket No. 31 at ¶17.) Donovan found a job and began working in September of 2006. (SPFF, Docket No. 31 at ¶19.) Parsons House required Donovan to pay 25% of his gross income on the basis of the CBPA he had signed. (SPFF, Docket No. 31 at ¶20.)

Donovan objected to the requirement and directed the BOP to the sentencing transcript quoted above. (SPFF, Docket No. 31 at ¶21.) Despite his objection, Donovan was required to pay 25% of his gross income throughout his stay at Parsons House, a total of $2,064.00. (SPFF, Docket No. 31 at ¶22.) Donovan requested repayment of this amount and the government has declined to do so. (SPFF, Docket No. 31 at ¶23.) In contrast to Donovan's situation, after his co-defendant, Stephen J. Dineen ("Dineen"), informed the staff at Parsons House that Judge Stadtmueller also waived his costs of community confinement, Parsons House ceased collecting 25% of Dineen's income and returned the money it had collected. (Docket No. 30 at 1-2.)

On October 18, 2006, and December 26, 2006, Donovan filed motions in the underlying criminal case asking Judge Stadtmueller to enforce his order. (SPFF, Docket No. 31 at ¶27; see also Case No. 91-CR-265, Docket Nos. 235, 236.) The government has not responded to these motions

and Judge Stadtmueller has taken no action regarding them; these motions remain pending before Judge Stadtmueller.

Donovan initially filed this action pro se on December 22, 2008. On June 3, 2009, the court granted Donovan's motion for the appointment of counsel, (Docket No. 17), and permitted appointed counsel to file an amended complaint, (Docket No. 20). Following a period for discovery, the parties filed opposing motions for summary judgment (Docket Nos. 27, 33), including the aforementioned stipulated proposed findings of fact. (Docket No. 31.) The pleadings on these motions are closed and the matters are ready for resolution. All parties have previously consented to the full jurisdiction of a magistrate judge.

**II. SUMMARY JUDGMENT STANDARD**

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139,

1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The parties agree that there are no disputed material facts and this case involves solely legal questions.

## III. ANALYSIS

Donovan contends that the BOP's collection of subsistence payments relating to his community confinement was inconsistent with Judge Stadtmueller's explicit order at the sentencing hearing waiving such payments. Accordingly, Donovan wants his money back. He presents three broad alternative theories for recovery: rescission of the CBPA under the Little Tucker Act, see 28 U.S.C. § 1346(a)(2); or two tort claims under the Federal Tort Claims Act ("FTCA"), see 28 U.S.C. §§ 1346(b), 2679(a), one of conversion and the other, negligence.

The government contends, "Judge Stadtmueller never waived the subsistence payment requirements, hence, plaintiff's recession [sic] theory must fail." (Docket No. 35 at 9.) The government also contends that Donovan's FTCA claims must fail because the allegedly tortious conduct relates to a unique government function of prison management for which there is no private-sector analogue; thus Donovan fails to satisfy the elements of a FTCA claim and the federal government has not waived sovereign immunity with respect to this claim. (Docket No. 35 at 10-11.) In support of its own motion for summary judgment, the government contends, in part, that "subsistence payments" are separate and distinct from costs of community confinement and other costs associated with sentencing. (Docket No. 35 at 14-18.)

4

Under the "Little" Tucker Act, district courts have jurisdiction over disputes under $10,000 involving express or implied contracts to which the government was a party. Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp. v. United States, 22 F.3d 741, 743 (7th Cir. 1994) (citing 28 U.S.C. § 1346(a)(2)); see also Orff v. United States, 545 U.S. 596, 603 (2005). The Act simply provides a court with jurisdiction; "it does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). Thus, the court turns to Wisconsin common law for the substantive law that governs this matter.

"[A] party to an invalid contract may, under the common law, have it rescinded and be restored to the status quo ante." Ott v. Peppertree Resort Villas, Inc., 2006 WI App 77, ¶15, 292 Wis. 2d 173, 716 N.W.2d 127 (Ct. App. 2006) (citing First Nat'l Bank & Trust Co. of Racine v. Notte, 97 Wis. 2d 207, 225-26, 293 N.W.2d 530 (1980)). The Seventh Circuit has recognized that a claim for rescission under 28 U.S.C. § 1346(a)(2) is one way an individual in Donovan's position may proceed. Eaton v. United States, 178 F.3d 902, 904 (7th Cir. 1999).

Donovan contends that the contract that he entered into with the government, i.e. the CBPA, was invalid because it conflicted with Judge Stadtmueller's sentencing order. Therefore, Donovan contends, he is entitled to rescind the contract and be returned to the status quo, that is, the return of the money that Parsons House withheld as subsistence payments.

The court will first address the government's argument that, regardless of Judge Stadtmueller's order, Donovan waived his right to bring this action by voluntarily entering into the CBPA. Arguably, Donovan did have the option of refusing to sign the CBPA whereby he agreed to the withholding of 25% of his wages. (See Docket No. 33 at 14.) However, for Donovan it was a Hobson's choice. If he refused to sign the agreement, in all likelihood, he would have remained in a more restrictive custodial environment. By signing the agreement, he subjected himself to an

obligation that he was allegedly not required to assume according to Judge Stadtmueller. Entering into an agreement is not voluntary when there is no realistic alternative.

Similarly, the court rejects the government's contention that by agreeing to the CBPA, Donovan waived his right to sue. Donovan's contention is that the contract was invalid; to argue that entering into an allegedly invalid contract bars a right to challenge the validity of the contract is fallacious and circuitous. Finally, the court finds no support for the government's position that a private contract, especially one entered into under the attendant circumstances, can trump an explicit court order.

The cases cited by the government in support of its theory that Donovan is precluded from bringing suit are inapposite. For example, Castro v. United States, 2009 WL 1814584 (N.D. Cal. 2009), involved an inmate contending that he was exempt from making subsistence payments by 28 C.F.R. § 505.3, which exempts inmates sentenced before January 1, 1995 from the "Cost of Incarceration Fee." The court found that subsistence payments were distinct from costs of incarceration. Castro did not allege that he was exempt because such costs had been explicitly waived by the court at sentencing. Similarly, the impact of a judge's sentencing order was not at issue in United States v. Goward in which a defendant in a criminal case filed a motion seeking the court to waive his requirement to make subsistence payments. 2009 WL 4945444 (E.D. Mich. 2009). In Goward, the defendant was essentially asking the district court to resolve a question that had not been addressed at sentencing. The court found that the defendant had not demonstrated extreme financial hardship and accordingly denied the defendant's request. Id.

Likewise, there was no argument that the requirement to pay subsistence payments was explicitly waived by the court at sentencing in the other cases cited by the government. See Murray v. Grondolsky, 2009 WL 2044821 (D.N.J. 2009) (rejecting § 2241 petitioner's efforts to avoid paying the "Cost of Incarceration Fee."); Gordon v. Lappin, 2008 W.L. 4179233 (S.D.N.Y 2008)

6

(same); Gleave v. Graham, 152 F.3d 918 (2nd Cir. 1998) (unpublished) (rejecting inmate's Fifth and First Amendment claims that he was exempt from making subsistence payments); King v. Rivera, 1999 WL 76831 (S.D.N.Y 1999) (rejecting inmate's claim that he was improperly removed from a community placement for refusing to make subsistence payments); United States v. Gonzalez, 1993 WL 362410 (S.D.N.Y 1993) (rejecting § 2255 petitioner's request that the sentencing court reconsider its order that he comply with all conditions of community placement including the payment of costs of confinement).

The court now turns to the pivotal issue in this matter – are subsistence payments separate and distinct from costs of community confinement? Subsistence payments are discussed in Chapter 5 of the BOP's Community Corrections Manual which in relevant part states:

> To promote financial responsibility and offset the cost of incarceration, the Bureau requires inmates to make subsistence payments to contractors. Contractors shall collect 25% of each employed inmate's weekly gross income not to exceed the daily inmate-day rate. . . . An inmate who fails to pay subsistence may have privileges withheld or disciplinary action may be taken, including termination from the program. . . . If the court indicates that subsistence should not be collected, the CCM shall comply with the court's order. . . . Absent a court order, offenders are responsible for subsistence payments as outlined in this section.

(PS 7300.09, Ch. 5.13.1, p. 30, Docket No. 34-1 at 4.)

In the present case, it is undisputed that Judge Stadtmueller did not state he was waiving "subsistence payments." Rather, he stated that the court determined that Donovan did not have the ability to pay the costs of incarceration and community confinement and accordingly waived any cost of incarceration and community confinement. (SPFF, Docket No. 31 at ¶9; Docket No. 34-1 at 17-18.) The government contends that Donovan's claim must fail because Judge Stadtmueller did not use the "magic words" "subsistence payments." The court rejects this argument.

Judge Stadtmueller's order was clear; the court waived any requirement that Donovan pay any costs related to his incarceration and community confinement. The government has failed to present any colorable argument that Judge Stadtmueller could have possibly been referring to

7

anything other than what the BOP has taken to calling subsistence payments. The court has not been pointed to any other part of the Community Corrections Manual or a BOP regulation that would suggest that an inmate may be required to pay any other costs associated with his confinement in a Community Corrections Center other than the subsistence payments referred to in Ch. 5.13.1.

There is absolutely no other way to regard subsistence payments other than as costs of community confinement or incarceration, both of which were waived by Judge Stadtmueller. According the BOP's own Community Corrections Manual, as quoted above, the purpose of what the BOP refers to as "subsistence payments" is to "offset the *cost of incarceration*." (PS 7300.09, Ch. 5.13.1, p. 30, Docket No. 34-1 at 4) (emphasis added). Judge Stadtmueller might not have used the BOP's precise phrase in his oral order at sentencing but the BOP uses Judge Stadtmueller's phrase in its own manual.

Further, the government has not directed the court to anything to suggest that the order of the sentencing court must be explicit and use the precise words "subsistence payments." To the contrary, the Community Corrections Manual suggests that an explicit and unequivocal order of the court is not required for the Community Corrections Center to forego collection of the subsistence payments. The Community Corrections Manual states that subsistence payments will not be collected if the court merely "indicates" that the payments should not be collected. (PS 7300.09, Ch. 5.13.1, p. 30, Docket No. 34-1 at 4.) The word indicate, well understood to mean "suggests," see, e.g., Webster's II New College Dictionary 564 (2001), is far more equivocal of a term than any of a number of other terms such as "instructs," "commands," or "orders," which might lend support to the government's argument that the court is required to use the phrase "subsistence payments" in the waiver order.

Finally, there is no dispute that Judge Stadtmueller was vested with the authority to waive the requirement that Donovan make subsistence payments.

8

The court further rejects the government's contention that it should interpret Judge Stadtmueller's inaction on Donovan's pending motions in the underlying criminal case as an implicit rejection of Donovan's argument. (See Docket No. 33.) There are any number of possible explanations for Judge Stadtmueller's inaction on Donovan's pending motions. For example, perhaps Judge Stadtmueller regards his order as crystal clear, as this court finds that it is, and thus there is no need for any further explanation. Alternatively, the fact that the motions remain unresolved might be a recognition of the fact that the Seventh Circuit held that a court lacks jurisdiction over motions such as those Donovan filed in the underlying criminal case. Eaton, 178 F.3d at 903-04. The Seventh Circuit's holding that courts lack jurisdiction to hear such motions also presents a reason as to why Donovan has not further pursued the matter further with Judge Stadtmueller, including seeking a writ of mandamus from the Seventh Circuit instructing Judge Stadtmueller to resolve the pending motions.

The reason for Judge Stadtmueller's inaction is beside the point. The bottom line is that this case is before this court and the parties' motion for summary judgment require resolution, and there is no dispute that this court has jurisdiction to resolve the present dispute. The court finds Judge Stadtmueller's order to be perfectly clear. The costs of community confinement, which necessarily includes any obligation to make subsistence payments, were waived at sentencing by Judge Stadtmueller. Thus, the agreement between Donovan and the BOP wherein he agreed to pay 25% of his gross income to Parsons House as subsistence payments was directly contrary to Judge Stadtmueller's explicit order. Parties cannot usurp a court's explicit order by way of a private contract. Accordingly, the court finds that Donovan has established he is entitled to rescission of the CBPA and the return of the funds wrongfully withheld from him, which the parties agree amounts to $2,064.00. In light of the court's conclusion with respect to Donovan's claim under the Little Tucker Act, see 28 U.S.C. § 1346(a)(2), the court need not consider Donovan's alternative

arguments for conversion or for negligence under the Federal Tort Claims Act ("FTCA"), see 28 U.S.C. §§ 1346(b), 2679(a).

**IT IS THEREFORE ORDERED** that the government's motion for summary judgment, (Docket No. 33), is **denied**.

**IT IS FURTHER ORDERED** that Donovan's motion for summary judgment, (Docket No. 27), is **granted**. The Clerk shall enter judgment in favor of Donovan and against the defendant in the amount of **$2,064.00.**

**IT IS FURTHER ORDERED** that Attorney Maria L. Kreiter is relieved from any further duty to represent Donovan in this matter. The court sincerely thanks Attorney Kreiter and the law firm of Godfrey & Kahn for accepting the court's pro bono appointment in this case and for the excellent representation afforded Donovan.

Counsel is reminded of the availability of reimbursement through the Eastern District of Wisconsin's Pro Bono Fund for eligible costs incurred in the representation of a client on a pro bono basis as a result of a court appointment. In accordance with §C.3. of this district's Regulations Governing the Prepayment and Reimbursement of Expenses in Pro Bono Cases From the District Court Pro Bono Fund," any request for reimbursement shall be made within **60 days** of this order and shall utilize this district's standard form.

Dated at Milwaukee, Wisconsin this 5th day of April, 2010.

                                                                  s/AARON E. GOODSTEIN
                                                                   U.S. Magistrate Judge